UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**FILED**

JAN 2 3 2003

Chief Judge Charles P. Kocoras
United States District Court

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* BERNARD LISITZA, STATE OF ILLINOIS *ex rel.* BERNARD LISITZA, STATE OF CALIFORNIA *ex rel.* BERNARD LISITZA, STATE OF DELAWARE *ex rel.* BERNARD LISITZA, DISTRICT OF COLUMBIA *ex rel.* BERNARD LISITZA, STATE OF FLORIDA *ex rel.* BERNARD LISITZA, STATE OF HAWAII *ex rel.* BERNARD LISITZA, STATE OF LOUISIANA *ex rel.* BERNARD LISITZA, STATE OF MASSACHUSETTS *ex rel.* BERNARD LISITZA, STATE OF NEVADA *ex rel.* BERNARD LISITZA, STATE OF TENNESSEE *ex rel.* BERNARD LISITZA, STATE OF TEXAS *ex rel.* BERNARD LISITZA, and BERNARD LISITZA, individually, | No. 01 C 7433 <br><br> CHIEF JUDGE KOCORAS <br><br> **FILED UNDER SEAL** <br><br> **JURY TRIAL DEMANDED** |
| Plaintiffs, | |
| v. | |
| OMNICARE, INC., | |
| Defendant. | |

## NOTICE OF FILING

To:   See Attached Service List

**PLEASE TAKE NOTICE** that on January 23, 2003, I filed with the Clerk of Court the attached AMENDED COMPLAINT.

Respectfully submitted,

Michael I. Behn

Date: January 23, 2003

Michael I. Behn
William W. Thomas
FUTTERMAN & HOWARD, CHTD.
122 S. Michigan Ave.
Suite 1850
Chicago, IL 60603
(312) 427-3600

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that he caused a copy of the foregoing AMENDED COMPLAINT to be served by messenger or first class mail on January 23, 2003 on:

Robert A. Barba, Esq.
Assistant Attorney General
100 W. Randolph
12th Floor
Chicago, IL 60601
Facsimile: 312-814-3406

AUSA Linda A. Wawzenski
AUSA Pierre C. Talbert
Office of the United States Attorney
219 S. Dearborn St.
Suite 500
Chicago, IL 60604
Facsimile: 312-886-4073

Michael I. Behn

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**FILED**

JAN 2 3 2003

Chief Judge Charles P. Kocoras
United States District Court

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* BERNARD LISITZA, STATE OF ILLINOIS *ex rel.* BERNARD LISITZA, STATE OF CALIFORNIA *ex rel.* BERNARD LISITZA, STATE OF DELAWARE *ex rel.* BERNARD LISITZA, DISTRICT OF COLUMBIA *ex rel.* BERNARD LISITZA, STATE OF FLORIDA *ex rel.* BERNARD LISITZA, STATE OF HAWAII *ex rel.* BERNARD LISITZA, STATE OF LOUISIANA *ex rel.* BERNARD LISITZA, STATE OF MASSACHUSETTS *ex rel.* BERNARD LISITZA, STATE OF NEVADA *ex rel.* BERNARD LISITZA, STATE OF TENNESSEE *ex rel.* BERNARD LISITZA, STATE OF TEXAS *ex rel.* BERNARD LISITZA, and BERNARD LISITZA, individually, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |

No. 01 C 7433

CHIEF JUDGE KOCORAS

**FILED UNDER SEAL**

**JURY TRIAL DEMANDED**

Plaintiffs,

v.

OMNICARE, INC.,

Defendant.

## AMENDED COMPLAINT

January 23, 2003

**Table of Contents**

I.      INTRODUCTION ........................................................ 1

II.     JURISDICTION AND VENUE ............................................. 2

III.    PARTIES ............................................................ 4

IV.     LISITZA'S EMPLOYMENT WITH OMNICARE ................................. 4

V.      DEFENDANT'S KNOWING SUBMISSION OF FALSE CLAIMS ................... 5

        A.      OmniCare's Government Business ................................... 5

        B.      OmniCare's Scheme to Defraud the Government ...................... 5

        C.      OmniCare's Falsely Inflating Prescription Charges through Illegally
                Changing Dosage Forms ........................................... 8

        D.      OmniCare's Retaliation Against Lisitza .......................... 10

VI.     DAMAGES TO THE GOVERNMENT ........................................ 12

COUNT I
        False Claims Act ................................................ 12

COUNT II
        Retaliation Under the False Claims Act ............................ 14

COUNT III
        Illinois Whistleblower Reward and Protection Act .................. 14

COUNT IV
        Retaliation Under the Illinois Whistleblower Reward and Protection Act .......... 15

COUNT V
        California False Claims Act ....................................... 16

COUNT VI
        Delaware False Claims and Reporting Act ........................... 17

COUNT VII
        District of Columbia False Claims Act ............................. 18

COUNT VIII
   Florida False Claims Act . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

COUNT IX
   Hawaii False Claims Act . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

COUNT X
   Louisiana Medical Assistance Programs Integrity Law . . . . . . . . . . . . . . . . . . . . . . . . . . 22

COUNT XI
   Massachusetts False Claims Act . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

COUNT XII
   Nevada False Claims Act . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

COUNT XIII
   Tennessee Medicaid False Claims Act . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

COUNT XIV
   Texas Medicaid Fraud Prevention Act . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

JURY DEMAND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

PRAYER . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

Now comes the United States of America *ex rel.* Bernard Lisitza, the States of Illinois, California, Delaware, District of Columbia, Florida, Hawaii, Louisiana, Massachusetts, Nevada, Tennessee, and Texas, *ex rel.* Bernard Lisitza, and Bernard Lisitza, individually (collectively "plaintiffs"), stating as follows for their Complaint against OmniCare, Incorporated:

## I.    INTRODUCTION

1.    This is an action by both the United States of America and the State of Illinois, through the relator Bernard Lisitza, to recover treble damages and civil penalties arising from false statements and claims made or caused to be made by defendant OmniCare, Incorporated ("OmniCare") to the United States Government ("United States") and to the State of Illinois ("Illinois"; collectively known as the "government"), in violation of the federal False Claims Act, 31 U.S.C. §§3729-32, and the Illinois Whistleblower Reward and Protection Act, 740 ILCS 175.

2.    OmniCare is a nationwide distributor of pharmaceuticals for nursing homes. OmniCare defrauded the government by changing prescriptions for a popular antacid from tablets to capsules in order to inflate government reimbursements by as much as 400%. The drug, ranitidine, is the generic form of the medication Zantac. For much of the past four years, it has been the second-most popularly prescribed medication in nursing homes.

3.    Generic ranitidine comes in two forms: tablets, which are prescribed the most frequently, and capsules, which are rarely prescribed. Because ranitidine tablets are prescribed so frequently, the Health Care Financing Administration ("HCFA") has set a Federal Upper Limit price for the tablets. (HCFA is now known as the Centers for Medicare & Medicaid Services.) Per Illinois Medicaid regulations, the Federal Upper Limit price is the maximum Illinois Public Aid will reimburse pharmacies that distribute ranitidine tablets.

4.      Because the capsules are prescribed so infrequently, however, no Federal Upper Limit price exists. Instead, Illinois Public Aid reimburses for capsules at a prevailing market price determined by the state. The prevailing market price for ranitidine capsules typically runs from two to four times the Federal Upper Limit price for tablets.

5.      Beginning in 2000 and continuing to the present, OmniCare took advantage of the discrepancy in reimbursement rates by systematically instructing its clerical staff to alter physician orders for ranitidine from tablets to capsules, in violation of state and federal law. Moreover, in order to create the appropriate conditions to illegally maximize their ranitidine reimbursement, OmniCare altered their computers to make it virtually impossible for data entry clerks to enter any prescription orders for ranitidine tablets. As further detailed below, OmniCare is liable for treble damages and penalties because they used this scheme to obtain reimbursement for over $10 million in false claims for inflated and unjustified costs.

## II.     JURISDICTION AND VENUE

6.      This is a civil action arising under the laws of the United States to redress violations of 31 U.S.C. §§3729-3730. This court has jurisdiction over the subject matter of this action: (i) pursuant to 31 U.S.C. §3732, which specifically confers jurisdiction on this Court for actions brought pursuant to 31 U.S.C. §§3729 and 3730; (ii) pursuant to 28 U.S.C. §1331, which confers federal subject matter jurisdiction; and (iii) pursuant to 28 U.S.C. §1345, because the United States is a plaintiff.

7.      This court has supplemental jurisdiction over plaintiffs' Illinois state law claims under 28 U.S.C. §1367.

2

8.     This suit is not based upon prior public disclosures of allegations or transactions in a criminal, civil, or administrative hearing, lawsuit or investigation or in a Government Accounting Office or Auditor General's report, hearing, audit, or investigation, or from the news media.

9.     To the extent that there has been a public disclosure unknown to Lisitza, Lisitza is an original source under 31 U.S.C. §3730 (e)(4) and 740 ILCS 175/4(e)(4). He has direct and independent knowledge of the information on which the allegations are based and has voluntarily provided the information to the Government before filing an action under this section which is based on the information.

10.     Plaintiff Lisitza is concurrently providing to the Attorney General of the United States, to the United States Attorney for the Northern District of Illinois, and to the Attorney General of the Illinois a statement summarizing known material evidence and information related to the Complaint, in accordance with the provisions of 31 U.S.C. §3730(b)(2) and 740 ILCS 175/4(b)(2). This disclosure statement is supported by material evidence.

11.     This court has personal jurisdiction over defendants under 31 U.S.C. §3732(a) because defendant submitted false or fraudulent claims directly or indirectly to the Government through its Illinois facilities, and defendant has made, used, or caused to be made or used, false or fraudulent records in this District to get false or fraudulent claims paid or approved by the Government. Defendant can be found in, is authorized to transact business in, and is now transacting business in this District. Venue is proper in this District under 31 U.S.C. §3732 (a) and 28 U.S.C. §1391.

3

## III.   PARTIES

12.   Plaintiff and relator Bernard Lisitza is a citizen and resident of the State of Illinois. He brings this action on his own behalf and on behalf of the Government pursuant to 31 U.S.C. §3730(b)(1) and 740 ILCS 175/4(b)(1).

13.   Defendant OmniCare, Inc., is a Kentucky corporation with its principal place of business in Covington, Kentucky. Defendant transacts business in Illinois through at least three northern Illinois facilities, located in DesPlaines, Illinois (*d/b/a* Jacobs HealthCare Systems), Elmhurst, Illinois (*d/b/a* OmniCare-Care Tech), and Skokie, Illinois (*d/b/a* Lawrence Weber Medical). OmniCare is in the business of providing pharmaceutical services for multiple nursing homes through its regional pharmaceutical distribution centers. During the relevant period, upper level OmniCare and Jacobs HealthCare officers who knew of and participated in the scheme include Patrick Keefe, Vice President of OmniCare, Carl Skrabash, C.E.O. of Jacobs HealthCare, and Marge Ford, Director of Pharmacy Operations at Jacobs HealthCare.

## IV.   LISITZA'S EMPLOYMENT WITH OMNICARE

14.   Plaintiff and relator Lisitza was employed by Jacobs HealthCare ("Jacobs") between 1992 and May 2001. Prior to 1992, Mr. Lisitza managed his own pharmaceutical distribution business. During his entire tenure with Jacobs, Mr. Lisitza was employed as a pharmacy supervisor, supervising several pharmacists filling orders for Jacobs' nursing home clients. In 1995, Jacobs was acquired by OmniCare and became part of OmniCare's nationwide pharmacy distribution network. Mr. Lisitza remained as a pharmacy supervisor, under OmniCare employment, until May 2001. As further detailed below, Mr. Lisitza was fired for questioning the false claims that are the subject of this action.

4

## V. DEFENDANT'S KNOWING SUBMISSION OF FALSE CLAIMS

### A. OmniCare's Government Business

15.     OmniCare provides pharmaceuticals for thousands of elderly and disabled clients whose benefits are paid by the Government. Specifically, OmniCare receives millions of dollars annually as reimbursement from the Government for services funded under the Medicaid, Medicare, CHAMPUS, and other government third-payor health insurance programs.

16.     At all times relevant to this action, OmniCare has been primarily engaged in providing pharmaceutical services to nursing homes through regional pharmaceutical centers. Many of OmniCare's pharmaceutical services are provided under contractual agreement with the state of Illinois through its Medicaid provider licensure program, whereby OmniCare agreed to provide pharmaceuticals to Illinois Medicaid patients in the nursing homes it serves, and the Illinois Department of Public Aid ("IDPA") would reimburse OmniCare its costs plus a fixed dispensing fee, meant to provide OmniCare with a profit for providing services to Illinois Medicaid clients.

### B. OmniCare's Scheme to Defraud the Government

17.     Since 2000, on information and belief, OmniCare regularly inflated the amount of money billed for ranitidine, the generic form of the medication commercially known as Zantac and the second-most popular drug prescribed to nursing home clients. This ongoing practice involved thousands of relatively small transactions. Its execution is detailed in paragraphs 18 - 29 below.

18.     OmniCare is supposed to bill for medications prescribed by physicians working onsite at the nursing homes for which OmniCare provides pharmacy services. OmniCare nursing

5

home physicians give prescription orders to their nurses in writing or verbally. The nurses present the prescription orders verbally or by facsimile to OmniCare clerical data entry personnel to be entered into OmniCare's computerized order entry system. The verbal orders are also entered on "Physician Order Sheets" which are verified monthly by nursing home physicians in order to make sure proper care is being given.

19.     When a prescription order is entered into OmniCare's order entry system, a pharmacist receives the order and fills it based on the physician's request. After a prescription order is filled by the pharmacist, the prescription is shipped to the nursing home facility where the patient resides.

20.     At least once per day, each OmniCare facility batches its Medicaid claims and submits them electronically to IDPA. As part of each electronic claim, OmniCare affixes its unique Medicaid provider identification number, which serves as an electronic stamp indicating that, as an Illinois Medicaid provider, OmniCare is in compliance with all applicable federal and state regulations. Claims are adjudicated instantaneously; OmniCare is given a chance to resubmit rejected claims and is reimbursed on a monthly basis by IDPA for all approved claims. Therefore, OmniCare makes representations and claims to the Government concerning Medicaid reimbursement on a daily basis.

21.     In Illinois, Medicaid prescription claims are paid at the lower of two rates: (1) the pharmacy's prevailing charge to the general public or (2) the Illinois Department of Public Aid's maximum price plus an established dispensing fee. Generally, pharmacies can make more money on those medications for which IDPA has not set a maximum price.

6

22.     Illinois sets maximum prices different than a pharmacy's prevailing charge to the

general public for several frequently-prescribed medications in order to control Medicaid

pharmacy program costs. When IDPA intends to set a maximum price for a frequently

prescribed medication, it sets the price according to federal and state guidelines at a rate that

allows the pharmacy distributor a small distribution fee.

23.     The specific medication at issue in the instant case, generic ranitidine, has a

maximum price different from the prevailing price for the *tablet* form only. Relator asserts that

this is because capsules are appropriately prescribed so infrequently; they are generally only

required for people who are intubated so they must receive medication dissolved in a solution

through a nasal tube. Because the tablet form of ranitidine is reimbursed at a maximum rate

determined by federal and state regulations while the capsule form is reimbursed at the prevailing

price, ranitidine capsules are substantially more lucrative than tablets for pharmacies.

24.     Relator alleges that in order to take advantage of the Medicaid pricing differential

between ranitidine tablets and capsules, OmniCare took steps to illegally change all tablet

prescriptions for their customers to capsule prescriptions.

25.     Relator alleges that OmniCare reconfigured their computer order entry system so

that it became impossible to order ranitidine tablets. Upon receiving tablet prescriptions,

OmniCare's data entry clerical personnel could not process the orders. Relator alleges that

OmniCare therefore instructed their clerical personnel to physically alter the prescriptions to

make it appear that physicians had prescribed capsules instead of tablets. After such a change

was made, the data entry personnel could then enter the appropriate prescription information into

7

the order entry system and the order for capsules was filled by OmniCare pharmacists, including Mr. Lisitza.

26.     The altered order (from tablets to capsules) was also entered on the patients' Physician Order Sheets. When these sheets were verified monthly by nursing home physicians per state regulations, they would fail to notice the change in dosage form. (Relator believes few physicians were aware of the price differential.) Physicians would sign off on the Physician Order Sheets, appearing to approve the change in form from tablet to capsule.

27.     A similar system existed for patients receiving refills on ranitidine. Patients who previously received ranitidine tablets could no longer do so after OmniCare altered their computerized order system; instead they were given capsules and the change was made to their Physician Order Sheets.

## C.     OmniCare's Falsely Inflating Prescription Charges through Illegally Changing Dosage Forms

28.     Ranitidine capsules and tablets are not considered the same medication under federal and state law. A pharmacy cannot unilaterally switch between one form of ranitidine and another without a physician's express order. Because ranitidine is only administered to intubated patients, in the normal course of business ranitidine capsules would rarely, if ever, be prescribed. By instructing their clerical personnel to manually alter the prescriptions to prescribe capsules rather than tablets, OmniCare violated several federal and state regulations concerning appropriate pharmaceutical care.

29.     Relator Lisitza was concerned about the inappropriate and illegal switch in dosage form. However, Relator alleges that when he raised the issue of potential illegality of

8

OmniCare's practices, he was informed by management, specifically by Ms. Marge Ford, at the time the Operations Manager for OmniCare's Illinois facilities, that he would face termination if he continued to complain about the scheme.

30.     By switching prescription dosage form from tablet to capsule, OmniCare billed and received substantially more money from IDPA than IDPA should have paid. The market rate for capsules, billed illegally by OmniCare, is some two to four times higher than the appropriate Federal Upper Limit price for ranitidine tablet (the price at which OmniCare should have been reimbursed had tablets been prescribed). By switching dosage forms illegally, OmniCare overbilled the government by millions of dollars.

31.     OmniCare has within its exclusive possession and control documents that would allow plaintiffs to plead this fraud with greater specificity. Documents that would reflect the fraud include: the original verbal orders as transcribed by OmniCare nurses compared with the orders entered into OmniCare's data entry system; changes in OmniCare's billing to IDPA for ranitidine demonstrating a sudden and abrupt change from tablets to capsules and a sharp increase in IDPA reimbursements; wholesale order records for ranitidine capsules and tablets; and "Physician Order Sheets" for clients whose medication was switched inappropriately from ranitidine tablets to raniditine capsules.

32.     Lisitza, on information and belief, believes that OmniCare's practices in making false claims to the government are based on a policy promulgated from OmniCare's corporate headquarters throughout the country.

9

33.     Relator Lisitza believes that OmniCare's practices in making false claims to the government are therefore not limited to Illinois facilities, but are likely taking place in other states with either a Medicaid whistleblower statute or a false claims act in their state laws.

**D.     OmniCare's Retaliation Against Lisitza**

34.     Approximately two years before his termination, Lisitza began investigating the possibility that Physician Authorization Letters (or "PALs") were being obtained using misleading information.  PALs are letters sent to physicians requesting that they sign off on a blanket authorization to switch from one drug to another.  Lisitza believed that PALs were being solicited from physicians under false pretenses – namely that OmniCare told physicians the medication switch they were approving would save patients money, when the opposite was often the case.

35.     Lisitza used his computer access code to investigate his concerns.  He reported to senior officials at OmniCare when he discovered that, contrary to what physicians were being told, the cost of switched products (per the PALs procured by OmniCare) exceeded the cost of products originally prescribed.

36.     These investigations, authorized at the time by OmniCare senior managers, triggered alerts in the office of the Manager of Data Entry for OmniCare at the time, Martin Gahan.

37.     Mr. Gahan, believing that Lisitza was doing investigations without authorization, approached OmniCare's Director of Human Resources and, on information and belief, instigated and implemented a plan to terminate Lisitza for his activities.

10

38.     Over the course of his investigations, Lisitza discovered the ranitidine scheme

being employed by OmniCare.  (OmniCare did not attempt to procure PALs for the switch

between tablets and capsules.)  Concerned that patients and the government were being

overcharged, he brought his discoveries concerning OmniCare's ranitidine capsule-for-tablet

switchouts to OmniCare senior managers' attention.

39.     The scheme to terminate Lisitza at that point escalated into a pattern of

harassment and entrapment, wherein OmniCare employees reported Lisitza for seemingly minor

incidents, leading to a multitude of writeups and threatened termination.

40.     When Lisitza continued to voice his concern that OmniCare was engaged in

activities that violated Federal and state statutes, he was targeted for termination.

41.     Despite years of consistently excellent performance reviews prior to voicing his

concerns that OmniCare was violating the law with its ranitidine switchout scheme, Lisitza's

subsequent performance reviews rated him poorly.

42.     Through a series of minor incidents that were, on information and belief,

orchestrated and engineered by OmniCare's senior management, Lisitza was repeatedly "written

up" and given verbal and written warnings because of alleged violations of company policy

concerning employee conduct.  Lisitza signed several of these warnings indicating he had

received them, without indicating that he was in fact guilty of the behavior alleged.

43.     Lisitza was ostracized from normal interactions at OmniCare, which had been

routine for years before.  For example, in staff meetings, senior OmniCare managers began to

repeatedly credit others for Lisitza's work.  Lisitza was excluded from supervisory meetings in

which he had previously been able to participate.  One Vice President began to publicly refer to

11

Lisitza as "trouble" upon seeing him. Senior managers who previously met with Lisitza one-on-one refused to speak to him.

44.     As a result of the actions and other discriminatory and retaliatory acts, Lisitza was placed in an extremely hostile work environment and suffered emotional distress.

45.     The incidents of "bad behavior" alleged by OmniCare escalated in frequency and seriousness until such time as Lisitza was terminated.

46.     When Lisitza was terminated, he was informed by OmniCare that if he did not sign the paperwork presented to him he would not receive any severance pay. He therefore signed all papers presented to him at that time.

## VI.     DAMAGES TO THE GOVERNMENT

47.     This fraud was instigated by high-level OmniCare corporate officers. Therefore, similar false claims are currently being made to all states' Medicaid programs where Medicaid reimbursement rates allow OmniCare to maximize their reimbursements.

48.     The scheme described above also defrauds the Government through any reimbursements to OmniCare in Medicare, Champus or other programs.

**COUNT 1**
**False Claims Act**

49.     Plaintiffs incorporate by reference and re-allege Paragraphs 1-29 as if fully set forth herein. This Count is brought by Lisitza in the name of the United States under the *qui tam* provisions of 31 U.S.C. §3730 for defendants' violation of 31 U.S.C. §3729.

50.     By virtue of the above-described acts, among others, defendant OmniCare knowingly submitted, and possibly continues to submit, directly or indirectly to officers,

12

employees or agents of the United States, false or fraudulent claims for payment or approval for generic ranitidine capsules.

51.     By virtue of the above-described acts, among others, defendant OmniCare knowingly made, used, or caused to be made or used, and may continue to make, use, or cause to be made or used, false records and statements to obtain payment from the United States for false or fraudulent claims for generic ranitidine capsules.

52.     By virtue of the above-described acts, defendants conspired to defraud the United States by getting a false or fraudulent claim allowed or paid.

53.     The amounts of the false or fraudulent claims to the United States were material.

54.     Plaintiffs United States, being unaware of the falsity of the claims and/or statements made by defendant, and in reliance on the accuracy thereof paid and may continue to pay defendant for illegally-switched prescriptions.  All unlawful conduct described above may have continued after Lisitza's termination with OmniCare.

55.     From 2000 to the date of this Complaint, by reason of the conduct described above, the Government has been damaged in an amount that is believed to be in excess of $2 million from OmniCare's northern Illinois facility alone.  As OmniCare's fraudulent practices extend throughout the company in states where Government reimbursement rates make such fraud lucrative for OmniCare; the amount of total damages to the Government exceeds $10 million.

## COUNT II
## Retaliation Under the False Claims Act

56.     Plaintiffs incorporate by reference and re-allege Paragraphs 1-53 as if fully set

forth herein. This Count is brought by Lisitza individually for defendant's violation of 31 U.S.C.

§3730(h).

57.     Lisitza discovered defendant's unlawful activities and began investigating those

activities in furtherance of a potential action to be filed under the False Claims Act.

58.     Lisitza's activities, as described above, are protected activities under the False

Claims Act, 31 U.S.C. §3729 *et seq.*

59.     Defendant OmniCare had knowledge that Lisitza was engaged in such protected

activities.

60.     Defendant harassed, threatened, and in other matters discriminated against Lisitza

in the terms and conditions of employment because of lawful acts done by Lisitza on behalf of

the Government and himself in furtherance of an action under the False Claims Act, including

investigation for an action to be filed under the False Claims Act.

## COUNT III
## Illinois Whistleblower Reward and Protection Act

61.     Plaintiffs incorporated by reference and re-allege Paragraphs 1-46 as if fully set

forth herein. This Count is brought by Lisitza in the name of the State of Illinois under the *qui*

*tam* provisions of 740 ILCS 175/4 for defendants' violation of 740 ILCS 175/3.

62.     By virtue of the above-described acts, among others, defendant OmniCare

knowingly submitted, and possibly continues to submit, directly or indirectly to officers,

14

employees or agents of the State of Illinois, false or fraudulent claims for payment or approval for generic ranitidine capsules.

63. By virtue of the above-described acts, among others, defendant OmniCare knowingly made, used, or caused to be made or used, and may continue to make, use, or cause to be made or used, false records and statements to obtain payment from the State of Illinois for false or fraudulent claims for generic ranitidine capsules.

64. By virtue of the above-described acts, defendants conspired to defraud the State of Illinois by getting a false or fraudulent claim allowed or paid.

65. The amounts of the false or fraudulent claims to the State of Illinois were material.

66. Plaintiff State of Illinois, being unaware of the falsity of the claims and/or statements made by defendant, and in reliance on the accuracy thereof paid and may continue to pay defendant for illegally-switched prescriptions. All unlawful conduct described above may have continued after Lisitza's termination with OmniCare.

## COUNT IV
## Retaliation Under the Illinois Whistleblower Reward and Protection Act

67. Plaintiffs incorporate by reference and re-allege Paragraphs 1-46 and 59-64 as if fully set forth herein. This Count is brought by Lisitza individually for defendant's violation of 750 ILCS 175/4(g).

68. Lisitza discovered defendant's unlawful activities and began investigating those activities in furtherance of a potential action to be filed under the Illinois Whistleblower Reward and Protection Act.

15

69.     Lisitza's activities, as described above, are protected activities under the Illinois Whistleblower Reward and Protection Act, 740 ILCS 175.

70.     Defendant OmniCare had knowledge that Lisitza was engaged in such protected activities.

71.     Defendant harassed, threatened, and in other matters discriminated against Lisitza in the terms and conditions of employment because of lawful acts done by Lisitza on behalf of the Government and himself in furtherance of an action under the False Claims Act, including investigation for an action to be filed under the Illinois Whistleblower Reward and Protection Act.

## COUNT V
## California False Claims Act

72.     Plaintiffs incorporated by reference and re-allege Paragraphs 1-46 as if fully set forth herein.  This Count is brought by Lisitza in the name of the State of California under the *qui tam* provisions of the California False Claims Act, California Government Code §12651(a).

73.     OmniCare, at all times relevant to this action, sold and continues to sell pharmaceuticals in the State of California.  OmniCare, at all times relevant to this action, has operated and continues to operate pharmaceutical distribution facilities in the State of California.

74.     By virtue of the above-described acts, among others, defendant OmniCare knowingly submitted, and possibly continues to submit, directly or indirectly to officers, employees or agents of the State of California, false or fraudulent claims for payment or approval for generic ranitidine capsules.

75.     By virtue of the above-described acts, among others, defendant OmniCare knowingly made, used, or caused to be made or used, and may continue to make, use, or cause to

16

be made or used, false records and statements to obtain payment from the State of California for false or fraudulent claims for generic ranitidine capsules.

76.     By virtue of the above-described acts, defendants conspired to defraud the State of California by getting a false or fraudulent claim allowed or paid.

77.     The amounts of the false or fraudulent claims to the State of California were material.

78.     Plaintiff State of California, being unaware of the falsity of the claims and/or statements made by defendant, and in reliance on the accuracy thereof paid and may continue to pay defendant for illegally-switched prescriptions. All unlawful conduct described above may have continued after Lisitza's termination with OmniCare.

## COUNT VI
## Delaware False Claims and Reporting Act

79.     Plaintiffs incorporated by reference and re-allege Paragraphs 1-46 as if fully set forth herein. This Count is brought by Lisitza in the name of the State of Delaware under the *qui tam* provisions of the Delaware False Claims and Reporting Act, Delaware Statute Title VI, Section 1201.

80.     OmniCare, at all times relevant to this action, sold and continues to sell pharmaceuticals in the State of Delaware. OmniCare, at all times relevant to this action, has operated and continues to operate pharmaceutical distribution facilities in the State of Delaware.

81.     By virtue of the above-described acts, among others, defendant OmniCare knowingly submitted, and possibly continues to submit, directly or indirectly to officers,

17

employees or agents of the State of Delaware, false or fraudulent claims for payment or approval for generic ranitidine capsules.

82. By virtue of the above-described acts, among others, defendant OmniCare knowingly made, used, or caused to be made or used, and may continue to make, use, or cause to be made or used, false records and statements to obtain payment from the State of Delaware for false or fraudulent claims for generic ranitidine capsules.

83. By virtue of the above-described acts, defendants conspired to defraud the State of Delaware by getting a false or fraudulent claim allowed or paid.

84. The amounts of the false or fraudulent claims to the State of Delaware were material.

85. Plaintiff State of Delaware, being unaware of the falsity of the claims and/or statements made by defendant, and in reliance on the accuracy thereof paid and may continue to pay defendant for illegally-switched prescriptions. All unlawful conduct described above may have continued after Lisitza's termination with OmniCare.

## COUNT VII
## District of Columbia False Claims Act

86. Plaintiffs incorporated by reference and re-allege Paragraphs 1-46 as if fully set forth herein. This Count is brought by Lisitza in the name of the District of Columbia under the *qui tam* provisions of D.C. Stat. §2-308.03 *et seq.*

87. OmniCare, at all times relevant to this action, sold and continues to sell pharmaceuticals in the District of Columbia.

18

88.     By virtue of the above-described acts, among others, defendant OmniCare knowingly submitted, and possibly continues to submit, directly or indirectly to officers, employees or agents of the District of Columbia, false or fraudulent claims for payment or approval for generic ranitidine capsules.

89.     By virtue of the above-described acts, among others, defendant OmniCare knowingly made, used, or caused to be made or used, and may continue to make, use, or cause to be made or used, false records and statements to obtain payment from the District of Columbia for false or fraudulent claims for generic ranitidine capsules.

90.     By virtue of the above-described acts, defendants conspired to defraud the District of Columbia by getting a false or fraudulent claim allowed or paid.

91.     The amounts of the false or fraudulent claims to the District of Columbia were material.

92.     Plaintiff District of Columbia, being unaware of the falsity of the claims and/or statements made by defendant, and in reliance on the accuracy thereof paid and may continue to pay defendant for illegally-switched prescriptions. All unlawful conduct described above may have continued after Lisitza's termination with OmniCare.

## COUNT VIII
## Florida False Claims Act

93.     Plaintiffs incorporated by reference and re-allege Paragraphs 1-46 as if fully set forth herein. This Count is brought by Lisitza in the name of the State of Florida under the *qui tam* provisions of Florida False Claims Act, Fl. Stat. §§68.081-68.09.

19

94.     OmniCare, at all times relevant to this action, sold and continues to sell pharmaceuticals in the State of Florida.  OmniCare, at all times relevant to this action, has operated and continues to operate pharmaceutical distribution facilities in the State of Florida.

95.     By virtue of the above-described acts, among others, defendant OmniCare knowingly submitted, and possibly continues to submit, directly or indirectly to officers, employees or agents of the State of Florida, false or fraudulent claims for payment or approval for generic ranitidine capsules.

96.     By virtue of the above-described acts, among others, defendant OmniCare knowingly made, used, or caused to be made or used, and may continue to make, use, or cause to be made or used, false records and statements to obtain payment from the State of Florida for false or fraudulent claims for generic ranitidine capsules.

97.     By virtue of the above-described acts, defendants conspired to defraud the State of Florida by getting a false or fraudulent claim allowed or paid.

98.     The amounts of the false or fraudulent claims to the State of Florida were material.

99.     Plaintiff State of Florida, being unaware of the falsity of the claims and/or statements made by defendant, and in reliance on the accuracy thereof paid and may continue to pay defendant for illegally-switched prescriptions. All unlawful conduct described above may have continued after Lisitza's termination with OmniCare.

20

## COUNT IX
## Hawaii False Claims Act

100. Plaintiffs incorporated by reference and re-allege Paragraphs 1-46 as if fully set forth herein. This Count is brought by Lisitza in the name of the State of Hawaii under the *qui tam* provisions of Hawaii False Claims Act, Haw. Rev. Stat. §661-21 *et seq.*

101. OmniCare, at all times relevant to this action, sold and continues to sell pharmaceuticals in the State of Hawaii.

102. By virtue of the above-described acts, among others, defendant OmniCare knowingly submitted, and possibly continues to submit, directly or indirectly to officers, employees or agents of the State of Hawaii, false or fraudulent claims for payment or approval for generic ranitidine capsules.

103. By virtue of the above-described acts, among others, defendant OmniCare knowingly made, used, or caused to be made or used, and may continue to make, use, or cause to be made or used, false records and statements to obtain payment from the State of Hawaii for false or fraudulent claims for generic ranitidine capsules.

104. By virtue of the above-described acts, defendants conspired to defraud the State of Hawaii by getting a false or fraudulent claim allowed or paid.

105. The amounts of the false or fraudulent claims to the State of Hawaii were material.

106. Plaintiff State of Hawaii, being unaware of the falsity of the claims and/or statements made by defendant, and in reliance on the accuracy thereof paid and may continue to

21

pay defendant for illegally-switched prescriptions. All unlawful conduct described above may have continued after Lisitza's termination with OmniCare.

## COUNT X
## Louisiana Medical Assistance Programs Integrity Law

107.    Plaintiffs incorporated by reference and re-allege Paragraphs 1-46 as if fully set forth herein. This Count is brought by Lisitza in the name of the State of Louisiana under the *qui tam* provisions of the Louisiana Medical Assistance Programs Integrity Law, Louisiana Rev. Stat. §439.

108.    OmniCare, at all times relevant to this action, sold and continues to sell pharmaceuticals in the State of Louisiana. OmniCare, at all times relevant to this action, has operated and continues to operate pharmaceutical distribution facilities in the State of Louisiana.

109.    By virtue of the above-described acts, among others, defendant OmniCare knowingly made, used, or caused to be made or used a false, fictitious, or misleading statement on for the purpose of receiving payment under the medical assistance programs which OmniCare was not eligible to receive for generic ranitidine capsules.

110.    By virtue of the above-described acts, defendants conspired to defraud the State of Louisiana by getting a false or fraudulent claim allowed or paid.

111.    The amounts of the false or fraudulent claims to the State of Louisiana were material.

112.    Plaintiff State of Louisiana, being unaware of the falsity of the claims and/or statements made by defendant, and in reliance on the accuracy thereof paid and may continue to

22

pay defendant for illegally-switched prescriptions. All unlawful conduct described above may have continued after Lisitza's termination with OmniCare.

## COUNT XI
## Massachusetts False Claims Act

113.    Plaintiffs incorporated by reference and re-allege Paragraphs 1-46 as if fully set forth herein. This Count is brought by Lisitza in the name of the State of Massachusetts under the *qui tam* provisions of the Massachusetts False Claims Act, Massachusetts Gen. Laws c.12 §5(A).

114.    OmniCare, at all times relevant to this action, sold and continues to sell pharmaceuticals in the State of Massachusetts. OmniCare, at all times relevant to this action, has operated and continues to operate pharmaceutical distribution facilities in the State of Massachusetts.

115.    By virtue of the above-described acts, among others, defendant OmniCare knowingly submitted, and possibly continues to submit, directly or indirectly to officers, employees or agents of the State of Massachusetts, false or fraudulent claims for payment or approval for generic ranitidine capsules.

116.    By virtue of the above-described acts, among others, defendant OmniCare knowingly made, used, or caused to be made or used, and may continue to make, use, or cause to be made or used, false records and statements to obtain payment from the State of Massachusetts for false or fraudulent claims for generic ranitidine capsules.

117.    By virtue of the above-described acts, defendants conspired to defraud the State of Massachusetts by getting a false or fraudulent claim allowed or paid.

23

118. The amounts of the false or fraudulent claims to the State of Massachusetts were material.

119. Plaintiff State of Massachusetts, being unaware of the falsity of the claims and/or statements made by defendant, and in reliance on the accuracy thereof paid and may continue to pay defendant for illegally-switched prescriptions. All unlawful conduct described above may have continued after Lisitza's termination with OmniCare.

## COUNT XII
## Nevada False Claims Act

120. Plaintiffs incorporated by reference and re-allege Paragraphs 1-46 as if fully set forth herein. This Count is brought by Lisitza in the name of the State of Nevada under the *qui tam* provisions of Nevada Rev. Stat. §357.010 *et seq.*, "Submission of False Claims to State or Local Government."

121. OmniCare, at all times relevant to this action, sold and continues to sell pharmaceuticals in the State of Nevada.

122. By virtue of the above-described acts, among others, defendant OmniCare knowingly submitted, and possibly continues to submit, directly or indirectly to officers, employees or agents of the State of Nevada, false or fraudulent claims for payment or approval for generic ranitidine capsules.

123. By virtue of the above-described acts, among others, defendant OmniCare knowingly made, used, or caused to be made or used, and may continue to make, use, or cause to be made or used, false records and statements to obtain payment from the State of Nevada for false or fraudulent claims for generic ranitidine capsules.

24

124.    By virtue of the above-described acts, defendants conspired to defraud the State of

Nevada by getting a false or fraudulent claim allowed or paid.

125.    The amounts of the false or fraudulent claims to the State of Nevada were

material.

126.    Plaintiff State of Nevada, being unaware of the falsity of the claims and/or

statements made by defendant, and in reliance on the accuracy thereof paid and may continue to

pay defendant for illegally-switched prescriptions.  All unlawful conduct described above may

have continued after Lisitza's termination with OmniCare.

## COUNT XIII
## Tennessee Medicaid False Claims Act

127.    Plaintiffs incorporated by reference and re-allege Paragraphs 1-46 as if fully set

forth herein.  This Count is brought by Lisitza in the name of the State of Tennessee under the

*qui tam* provisions of the Tennessee Medicaid False Claims Act, Tenn. Stat. §§75-1-181 *et seq.*

128.    OmniCare, at all times relevant to this action, sold and continues to sell

pharmaceuticals in the State of Tennessee.  OmniCare, at all times relevant to this action, has

operated and continues to operate pharmaceutical distribution facilities in the State of Tennessee.

129.    By virtue of the above-described acts, among others, defendant OmniCare

knowingly submitted, and possibly continues to submit, directly or indirectly to officers,

employees or agents of the State of Tennessee, false or fraudulent claims for payment or approval

for generic ranitidine capsules.

130.    By virtue of the above-described acts, among others, defendant OmniCare

knowingly made, used, or caused to be made or used, and may continue to make, use, or cause to

25

be made or used, false records and statements to obtain payment from the State of Tennessee for false or fraudulent claims for generic ranitidine capsules.

131. By virtue of the above-described acts, defendants conspired to defraud the State of Tennessee by getting a false or fraudulent claim allowed or paid.

132. The amounts of the false or fraudulent claims to the State of Tennessee were material.

133. Plaintiff State of Tennessee, being unaware of the falsity of the claims and/or statements made by defendant, and in reliance on the accuracy thereof paid and may continue to pay defendant for illegally-switched prescriptions. All unlawful conduct described above may have continued after Lisitza's termination with OmniCare.

## COUNT XIV
## Texas Medicaid Fraud Prevention Act

134. Plaintiffs incorporated by reference and re-allege Paragraphs 1-46 as if fully set forth herein. This Count is brought by Lisitza in the name of the State of Texas under the *qui tam* provisions of the Texas Medicaid Fraud Prevention Act, Tx. Human Resources Code, Ch. 36, §36.101 *et seq.*

135. OmniCare, at all times relevant to this action, sold and continues to sell pharmaceuticals in the State of Texas. OmniCare, at all times relevant to this action, has operated and continues to operate pharmaceutical distribution facilities in the State of Texas.

136. By virtue of the above-described acts, among others, defendant OmniCare knowingly and intentionally presented or caused to be presented, and possibly may continue to present or cause to be presented, a claim for services under the Texas Medicaid program for a

26

service or product that has not been approved or acquiesced in by a licensed physician or health care provider.

137. By virtue of the above-described acts, defendants conspired to defraud the State of Texas by getting a false or fraudulent claim allowed or paid.

138. The amounts of the false or fraudulent claims to the State of Texas were material.

139. Plaintiff State of Texas, being unaware of the falsity of the claims and/or statements made by defendant, and in reliance on the accuracy thereof paid and may continue to pay defendant for illegally-switched prescriptions. All unlawful conduct described above may have continued after Lisitza's termination with OmniCare.

## JURY DEMAND

140. Plaintiffs demand trial by jury on all claims.

## PRAYER

141. WHEREFORE, plaintiffs pray for judgment against defendant as follows:

    a.    That defendant OmniCare be found to have violated and be enjoined from future violations of the federal False Claims Act, 31 U.S.C. §3729-32, the Illinois Whistleblower Reward and Protection Act, 740 ILCS 175, the California False Claims Act, Cal. Gov. Code §12651(a), the Delaware False Claims and Reporting Act, Del. Stat. Tit. VI. §1201, the District of Columbia False Claims Act, D.C. Stat. §2-308.03 *et seq.*,the Florida False Claims Act, Fl. Stat. §§68.081-68.09, the Hawaii False Claims Act, Haw. Rev. Stat. §661-21 *et seq.*, the Louisiana Medical Assistance Programs Integrity Law, La. Rev. Stat. §439, Massachusetts False Claims Act, Mass.

27

Gen. Laws c.12 §5(A), the Nevada False Claims Act, Nevada Rev. Stat.
§357.010 *et seq.*, the Tennessee Medicaid False Claims Act, Tenn. Stat.
§§75-1-181 *et seq.*, and the Texas Medicaid Fraud Prevention Act, Tx.
Human Resources Code, Ch. 36, §36.101 *et seq.*

b.      That this Court enter judgment against defendant OmniCare in an amount
equal to three times the amount of damages the United States Government
has sustained because of defendant's false or fraudulent claims, plus the
maximum civil penalty for each violation of 31 U.S.C. §3729.

c.      That plaintiffs be awarded the maximum amount allowed pursuant to
§ 3730(d), and all relief to which they are entitled pursuant to §3730(h) of
the False Claims Act.

d.      That this Court enter judgment against defendant OmniCare in an amount
equal to three times the amount of damages the State of Illinois has
sustained because of defendants' false or fraudulent claims, plus the
maximum civil penalty for each violation of the Illinois Whistleblower
Reward and Protection Act, 740 ILCS 175.

e.      That this Court enter judgment against defendant OmniCare in for the
maximum amount of damages sustained by each State or District because
of defendant's false or fraudulent claims, plus the maximum civil penalty
for each violation of the California False Claims Act, Cal. Gov. Code
§12651(a), the Delaware False Claims and Reporting Act, Del. Stat. Tit.
VI. §1201, the District of Columbia False Claims Act, D.C. Stat. §2-

28

308.03 *et seq.*,the Florida False Claims Act, Fl. Stat. §§68.081-68.09, the Hawaii False Claims Act, Haw. Rev. Stat. §661-21 *et seq.*, the Louisiana Medical Assistance Programs Integrity Law, La. Rev. Stat. §439, Massachusetts False Claims Act, Mass. Gen. Laws c.12 §5(A), the Nevada False Claims Act, Nevada Rev. Stat. §357.010 *et seq.*, the Tennessee Medicaid False Claims Act, Tenn. Stat. §§75-1-181 *et seq.*, and the Texas Medicaid Fraud Prevention Act, Tx. Human Resources Code, Ch. 36, §36.101 *et seq.*

f.     That plaintiffs be awarded the maximum amount allowed pursuant to 740 ILCS 175/4(d) of the Illinois Whistleblower Reward and Protection Act, the California False Claims Act, Cal. Gov. Code §12651(a), the Delaware False Claims and Reporting Act, Del. Stat. Tit. VI. §1201, the District of Columbia False Claims Act, D.C. Stat. §2-308.03 *et seq.*,the Florida False Claims Act, Fl. Stat. §§68.081-68.09, the Hawaii False Claims Act, Haw. Rev. Stat. §661-21 *et seq.*, the Louisiana Medical Assistance Programs Integrity Law, La. Rev. Stat. §439, Massachusetts False Claims Act, Mass. Gen. Laws c.12 §5(A), the Nevada False Claims Act, Nevada Rev. Stat. §357.010 *et seq.*, the Tennessee Medicaid False Claims Act, Tenn. Stat. §§75-1-181 *et seq.*, and the Texas Medicaid Fraud Prevention Act, Tx. Human Resources Code, Ch. 36, §36.101 *et seq.*, and all relief to which they are entitled pursuant to said laws.

29

g.    That plaintiffs be awarded all costs of this action, including expert witness

fees, attorneys' fees, and court costs.

h.    That plaintiffs recover such other relief as the Court deems just and

proper.

Respectfully submitted,

UNITED STATES OF AMERICA *ex rel.*
BERNARD LISITZA, STATE OF ILLINOIS *ex rel.*
BERNARD LISITZA, STATE OF CALIFORNIA
*ex rel.* BERNARD LISITZA, STATE OF
DELAWARE *ex rel.* BERNARD LISITZA,
DISTRICT OF COLUMBIA *ex rel.* BERNARD
LISITZA, STATE OF FLORIDA *ex rel.*
BERNARD LISITZA, STATE OF HAWAII *ex rel.*
BERNARD LISITZA, STATE OF LOUISIANA *ex
rel.* BERNARD LISITZA, STATE OF
MASSACHUSETTS *ex rel.* BERNARD LISITZA,
STATE OF NEVADA *ex rel.* BERNARD
LISITZA, STATE OF TENNESSEE *ex rel.*
BERNARD LISITZA, STATE OF TEXAS *ex rel.*
BERNARD LISITZA, and BERNARD LISITZA,
individually,

By:    _____

Attorney for Plaintiffs

Date: January 23, 2003

Michael I. Behn
William W. Thomas
FUTTERMAN & HOWARD, CHTD.
122 South Michigan Avenue
Suite 1850
Chicago, IL 60603
(312) 427-3600